UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHET ADAMSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:22-cr-00011-LEW |
| | ) | 2:23-cv-00425-LEW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 60.) Following a guilty plea, Petitioner was convicted of possession with intent to distribute cocaine; the Court sentenced Petitioner to eighty-seven months in prison. (Judgment, ECF No. 53.) He did not file an appeal.

Petitioner claims ineffective assistance of counsel before the guilty plea, at sentencing, and during the period he could have filed an appeal. Petitioner also requested an evidentiary hearing. (Motion for Evidentiary Hearing, ECF No. 68.) The Government requests dismissal. (Response, ECF No. 79.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court deny the motion for an evidentiary hearing and grant the Government's request to dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In February 2021, following an investigation over several months, law enforcement officers had reason to believe Petitioner was returning from Massachusetts with controlled

substances.  (Prosecution Version of the Offense at 1, ECF No. 40; Revised Presentence Investigation Report (PSR) ¶¶ 7–13, ECF No. 45.)  On February 6, 2021, officers observed and stopped Petitioner's vehicle, a canine alerted to drugs, officers found a plastic bag containing white powder which later proved to be 126 grams of a substance containing cocaine, and Petitioner was arrested on state charges.  (Prosecution Version at 1–2; PSR ¶ 13.)  Because he was at that time subject to federal supervision following a prior sentence for distributing cocaine base, the Government initiated proceedings to revoke Petitioner's supervised release.  (Judgment, 2:03-cr-00095-JDL-1 ECF No. 67; Arrest Warrant, 2:03-cr-00095-JDL-1 ECF No. 96.)

In August 2021, the Government charged Petitioner with one count of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c).  (Criminal Complaint, ECF No. 1.)  The grand jury returned an indictment in January 2022 alleging the same offense.  (Indictment, ECF No. 17.)  In September 2022, Petitioner pled guilty pursuant to a plea agreement.  (Change of Plea Hearing, ECF No. 43; Plea Agreement, ECF No. 39.)  On the same day the Government filed the plea agreement, it also filed an information alleging that the prior federal conviction subjected Petitioner to a higher maximum statutory sentence.  (Information, ECF No. 41.)  Because Petitioner agreed to plead guilty and waive his right to appeal from a sentence not exceeding fifty-seven months in prison, the Government agreed to recommend sentencing guideline reductions for acceptance of responsibility.  (Plea Agreement at 1–3.)

For sentencing purposes, the probation office recommended and the Court accepted that the statutory maximum sentence was thirty years in prison, that Petitioner's relevant

conduct made him responsible for 975 kg of converted drug weight producing a base offense level of twenty-eight, that Petitioner was subject to a two-point enhancement for a leadership role in directing the action of another, and that Petitioner was entitled to a three-point reduction for acceptance of responsibility. (PSR ¶ 21–29, 84; Sentencing Transcript at 28, ECF No. 57.) A total offense level of twenty-seven and a criminal history category of III corresponded to a guideline range of 87 to 108 months in prison. (PSR ¶ 37, 51, 85; Sentencing Transcript at 28.)

In February 2023, the Court sentenced Petitioner to consecutive terms of thirty-three months in prison for the revocation of supervised release and eighty-seven months for the new offense. (Judgment, ECF No. 53; Sentencing Transcript at 35; Revocation Judgment, 2:03-cr-00095-JDL-1 ECF No. 124.) Petitioner did not file an appeal. He subsequently filed the § 2255 motion less than one year later.

## DISCUSSION

**A.     Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"[P]ro se habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*,

3

429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner

4

must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145

(1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.     Pre-Plea Proceedings**

Petitioner argues that his attorney provided ineffective assistance before the guilty plea because at his initial appearance, counsel did not challenge the constitutionality of the stop, searches, and arrest, and counsel did not file a motion to suppress any evidence collected during those events.[1] Petitioner asserts the officers lacked probable cause to stop and search his vehicle, but he does not dispute the description of the investigation contained in the PSR. According to the description of events that he admitted was accurate, (Sentencing Transcript at 4–5, 8–11, 37), the stop and searches followed a lengthy investigation involving informants, a series of interactions with other known drug

---

[1] Throughout his motion, Petitioner arguably raises both ineffective assistance claims and freestanding claims. The freestanding claims are barred for various reasons, including that he did not raise the claims at trial or on appeal. The only potential path to establish cause and prejudice to excuse the procedural default is ineffective assistance of counsel. The ineffective assistance standard thus governs each of Petitioner's claims for postconviction relief.

traffickers, at least one arrest of an associate, at least one recorded phone call, electronic tracking of Petitioner's vehicle, and an alert from a trained canine. After searching the vehicle, the officers found what appeared to be (and was later confirmed to be) a large quantity of cocaine. The only evidence in the postconviction record, therefore, demonstrates that the Government had more than enough evidence to establish probable cause to stop and search the vehicle.

Petitioner also characterizes the affidavit in support of the arrest warrant as vague and thus there was insufficient evidence to support a probable cause finding. A review of the affidavit, however, reveals that the affidavit contains more than enough detail to satisfy the probable cause standard. Even if it did not, Petitioner does not explain how he could have obtained dismissal or some other more favorable outcome without the Government having the opportunity to present all the other evidence to the Court. As discussed above, because Petitioner does not dispute the accuracy of the description of the investigation and evidence the Government collected, there is no likelihood that the case would have proceeded differently if he had not waived his right to a preliminary evidentiary hearing.

Because there was no meritorious basis to seek dismissal of the charges or the suppression of evidence, counsel did not perform deficiently, and Petitioner was not prejudiced by counsel's decisions. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic").

### C. Accuracy of the PSR and the Consideration of Uncharged Conduct

Petitioner contends his attorney provided ineffective assistance at sentencing by failing to investigate certain factual issues, by communicating with Petitioner inadequately, and by declining to object to the inclusion in the PSR of what Petitioner alleges is misinformation. The argument fails because although Petitioner cites four paragraphs of the PSR that are allegedly false, he does not explain which portions of those paragraphs are false or explain why the statements are false. Likewise, Petitioner does not identify the additional facts that would have been discovered with further investigation or explain why further investigation was necessary given that Petitioner was in the best position to know whether any factual statements were false or meaningfully incomplete. *See Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010) ("Where, as here, the result of counsel's alleged failure to investigate is wholly speculative," an ineffective assistance claim fails).

Petitioner also asserted at sentencing that he had reviewed the revocation report and the PSR, that he understood the statements in the reports, that the facts asserted in the reports were true, and that he had no objections to the content of the reports. (Sentencing Transcript at 4–5, 8–11, 37.) Given Petitioner's admissions and the overall record, there is no reason to credit Petitioner's conclusory and unsupported assertions that four paragraphs were false, that the PSR contained "misinformation," or that Petitioner had not seen the PSR before sentencing. *See Wilkins v. United States*, 754 F.3d 24, 30 (1st Cir. 2014) (sworn admissions are "entitled to significant (albeit not dispositive) weight" when contradicted "though a collateral attack").

Even if Petitioner could establish some inaccuracy in a report or an oversight on the part of his attorney, Petitioner cannot satisfy the prejudice element because there is no basis upon which the Court would have concluded that the issues Petitioner appears to raise were material and would impact the sentence.  (*See* Sentencing Transcript at 38 ("I would impose the same sentence even if the applicable sentencing guideline range would have been reduced by any or all of the objections made by the defendant")).  Petitioner asserts that without the misinformation, his guideline range would have been 18 to 24 months instead of 87 to 108 months, and that his base offense level should have been 13 instead of 27, but Petitioner does not explain specifically how he reached that conclusion.[2]

Petitioner allegedly did not understand that his sentence would be impacted by conduct that was not admitted during the guilty plea.  Counsel allegedly provided ineffective assistance by failing to object to the consideration of the uncharged conduct and the lower standard of proof.  "The Supreme Court has held that the guidelines' grant of discretion to sentencing judges to consider a defendant's other relevant conduct, including uncharged or unconvicted conduct" is constitutional "provided that the underlying facts are found by a preponderance of the evidence," *United States v. Gaffney-Kessell*, 772 F.3d 97, 101 (1st Cir. 2014), and "so long as those facts do not affect either the statutory minimum . . . or the statutory maximum."  *United States v. Munyenyezi*, 781 F.3d 532, 544 (1st Cir.

---

[2] Petitioner mentioned the guideline enhancement for his leadership role and the existence of certain policy statements, but the basis for Petitioner's apparent challenge to the enhancement is not discernible. Similarly, Petitioner also cites Rule 32 and takes issue with the failure to describe explicitly upon which subsection of U.S.S.G. § 3B1.1 the Court or the Probation Office relied, but Petitioner cites no authority requiring that level of specificity.

9

2015) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013)).  Guideline enhancements, such as an offense level increased by a scheme of similar drug transactions, "do not punish a defendant for crimes of which he was not convicted," but rather guide the sentencing court's discretion based on "the manner in which he committed the crime of conviction." *United States v. Watts*, 519 U.S. 148, 154 (1997).[3]

Because the Court determined the statutory range based only on the charged offense, and because the Court only considered the scheme of other transactions proven by a preponderance of the evidence while exercising its discretion within that statutory range, Petitioner's argument lacks merit.[4]

## D. Consultation and Appeal

Petitioner alleges that his attorney provided ineffective assistance by failing to file an appeal or consult with him about filing an appeal.  The Supreme Court has defined trial counsel's obligation concerning a defendant's right to appeal as follows:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous

---

[3] To the extent that a different result might be required in exceptional circumstances where the uncharged or acquitted conduct played an inordinately significant role in the sentence, such as an increase to a mandatory life sentence for a firearms offense based on a murder for which the defendant was previously acquitted in state court, *see United States v. Carvajal*, 85 F.4th 602, 614 (1st Cir. 2023) (discussing *United States v. Lombard*, 72 F.3d 170 (1st Cir. 1995), this case does not present any such exceptional circumstances.

[4] Petitioner raised the same argument under other labels, such as a constructive amendment of the indictment and a double jeopardy violation, but the alternative formulations fail for the same reasons. *See Witte v. United States*, 515 U.S. 389, 398 (1995) ("we specifically have rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime").

grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

A defendant need not use "magic words" to "reasonably demonstrate" an interest in appealing; saying something that indicates a desire to pursue further relief that might be available is enough, but merely expressing displeasure at sentencing is insufficient to generate the duty to consult about an appeal. *Rojas-Medina v. United States*, 924 F.3d 9, 17 (1st Cir. 2019). The term "consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

Because a presumption of prejudice applies to a loss of the opportunity to pursue an appeal, "[a] defendant is not required to show that an appeal is likely to be successful," *Rojas-Medina*, 924 F.3d at 16, and a prior appeal waiver during a guilty plea does not destroy the presumption of prejudice if it is otherwise applicable. *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019). To satisfy the prejudice inquiry in this context, therefore, a defendant only needs to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

Petitioner does not assert that he directed his attorney to file an appeal or said anything to counsel to demonstrate that he intended to appeal. Whether his attorney had a duty to consult, therefore, depends on whether, based on the information counsel knew or should have known, a rational defendant in Petitioner's position would want to appeal. The Supreme Court has observed that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480. Here, Petitioner pled guilty, did not expressly reserve issues for appeal, and does not cite any plausible argument that counsel should have expected someone in his position to raise on appeal. Petitioner mentions the consideration in sentencing of uncharged relevant conduct, but as discussed above, that issue is well-settled and the argument therefore has no merit.

Even if the Court assumes there was a duty to consult, because Petitioner cites no corroborating evidence, and because all the evidence in the record undermines his assertion, Petitioner has not satisfied his burden to show that counsel failed to consult with him. For example, Petitioner's attorney provided a statement asserting that he consulted with Petitioner regarding his appeal rights and describing the exchange. (Francis Declaration at 4, ECF No. 80.) According to Petitioner's attorney, after the consultation, Petitioner said he did not plan to appeal but asked for a sentencing transcript. (*Id.*) Counsel informed Petitioner that if he wanted a transcript, he would have to request one from the court, but counsel offered to provide Petitioner with a copy of his own file material or the documents filed on the public docket. (*Id.*) The docket in this case reflects that a transcript

of the sentencing hearing was filed even though no appeal was initiated. Petitioner's counsel asserts that during his last conversation with Petitioner, Petitioner did not wish to file an appeal.

Petitioner maintains that counsel told him before sentencing that counsel would file an appeal if the sentence exceeded the fifty-seven-month appeal waiver and then never communicated with Petitioner after sentencing. Despite the alleged belief that his attorney was pursuing an appeal, however, Petitioner does not assert that he ever contacted his attorney, this Court, or the First Circuit to ask about the status of the appeal.

Furthermore, even if counsel failed to consult, Petitioner has not established the requisite showing of prejudice. Because the Court explicitly informed Petitioner that he had retained the right to appeal from his sentence, that he could do so without cost, that the clerk would file an appeal for him if he merely contacted the clerk within fourteen days, and because Petitioner confirmed that he understood, (Sentencing Transcript at 38–39), the Court need not credit Petitioner's post hoc allegation in his latest filing that he would have appealed if only counsel explained his option to appeal.

This record, therefore, does not support the conclusion that counsel performed deficiently or that Petitioner was prejudiced regarding the filing of an appeal.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. I therefore recommend the Court deny Petitioner's motion for an evidentiary hearing. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend

that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of July, 2024.